Vicki NOLAN, Mary Elizabeth House, and David Gettemeyer, Plaintiffs-Respondents,

v.

CITY OF ST. CHARLES, et al., Defendants-Appellants.

No. 50233.

Missouri Court of Appeals, Eastern District, Division Three.

March 4, 1986.

Rehearing Denied April 8, 1986.

Thomas M. Utterback, St. Louis, for defendants-appellants.

Richard Andrew Barry, St. Louis, for plaintiffs-respondents.

KAROHL, Presiding Judge.

Defendant-appellant, City of St. Charles (City), appeals trial court judgment reversing the City of St. Charles Personnel Code Board of Appeals' (Board) decision to terminate three police officers. Trial court review was requested under Chapter § 536 RSMo 1978. The trial court found the decision of the Board not supported by competent and substantial evidence upon the whole record, against the weight of the evidence, arbitrary, capricious, unreasonable, unauthorized by law and an abuse of discretion. The court ordered the police officers reinstated. We find the decision of the Board is not a final judgment and remand for further proceedings.

The facts are undisputed. The three police officers, Vicki Nolan, Mary Elizabeth House and David Gettemeyer were contacted by Dr. Rodden, a chiropractor, to assist him in determining if another chiropractor, Dr. Mueller was slandering him. Dr. Rodden was socially and professionally acquainted with the officers.

Acting on Dr. Rodden's request the officers posing as new patients visited Dr. Mueller's office twice. During these visits the officers surreptitiously recorded statements made by Dr. Mueller against Dr. Rodden. Dr. Rodden used these statements as the basis for a civil suit filed against Dr. Mueller.

The officers testified at a hearing before the Board that they were not aware Dr. Rodden was considering a civil suit against Dr. Mueller. They stated that had they known about such a suit they probably would not have assisted him. The officers received no compensation from Dr. Rodden except for expenses. The officers were not on scheduled duty at the time of the visits.

Upon learning of the officers' involvement in the civil suit, the Chief of Police recommended in a detailed letter to the City Administrator that the officers' employment be terminated. The City Administrator immediately notified the officers of termination. The officers were not afforded a pre-termination hearing by the Administrator as provided for in the appellant City's Policy Manual. The officers appealed to the three member Board. The Board made findings of fact and conclusions of law affirming the City Administrator's decision. The Board stated it only had the power to affirm or reverse and not to modify the decision of the Administrator. It limited its decision to matters of liability and ignored discipline.

The Board determined the officers violated ordinances, rules and a department general order against off-duty employment, that their behavior constituted unfair and unequal treatment between two citizens of St. Charles, and created an advantage of one citizen over another; that they brought disrespect upon police officers and the police department; and, that their conduct was unbecoming as police officers.

The trial court found erroneous the Board's conclusion that their power was limited to affirming or reversing the decision of the Administrator. The court found the above-mentioned charges unsupported by substantial and competent evidence. The trial court ruled the determinations of the Board did not invoke discretionary decisions but involved only the application of the law to the facts.

The City contends the trial court erred in: (1) finding the decision of the Board unsupported by competent and substantial evidence; (2) finding the Board had violated the city provisions for due process in concluding they were authorized only to affirm or reverse the decision of the Administrator; (3) independently weighing the evidence; and (4) ordering the officers reinstated.

The police officer's petition under Chapter 536 sought review of a contested case before the St. Charles Personnel Code Board of Appeals. The officers alleged that the determination of the Board violat-

ed all seven grounds of inquiry authorized by § 536.140.2 RSMo 1978. They claim insufficient evidence, an unlawful and unauthorized procedure before the Board, an unfair trial, findings which were arbitrary, capricious and unreasonable, an abuse of discretion, and violations of due process and equal protection provisions of the United States and Missouri constitutions.

The Board expressly concluded: "That it [had] jurisdiction to reverse or affirm and not jurisdiction to modify the discipline." This the trial court found to be erroneous as a matter of law for the reason that Article 8, sub-section B of the Policy Manual directed the Board to "submit a written statement of facts, findings and the Board's decision *based on that information.* The decision *of the Board* shall be final." (our emphasis) The trial court found this required the Board to make its own independent judgment on the issues of guilt and punishment. The trial court supported this view by deciding that constitutional due process required this result. It relied on a prior decision of this court, *Feltz v. Hesselback,* 675 S.W.2d 60 (Mo. App.1984). It is on this basis we find the Board did not fulfill its duty in reviewing discipline and so determine its findings were not final.

The trial court found particularly that the evidence did not support a finding that the officers had violated City Ordinance 2–342, 2–345, Articles 18 and 37 of the Rules of Conduct, and General Order 4. These were the only violations found by the Board. The trial court's finding with regard to the charges was based upon a conclusion that each was not supported by competent and substantial evidence, and is against the weight of the evidence. The trial court concluded that the deficiencies of proof of charges rendered the determination to discharge the officers arbitrary, capricious, unreasonable, unauthorized by law, and an abuse of discretion.

The trial court also found that the findings of the Board were wrong as a matter of law based upon its determination of the undisputed facts. We observe that this would not have been true if the Board had exercised discretion and determined the appropriate discipline. We also observe that the Board's view, if adopted, would not be compatible with a case where it found one or more but not all of the charges were violations, as a matter of fact or law. Restated, the Administrator could have discharged appellants for a combination of all violations or for each separate violation. If the Board found only one violation was supported by the evidence, it would not know the extent of discipline which the City Administrator would have imposed on the same finding. We conclude that the City's view is not compatible with the Board's duty. The trial court concluded that this finding by the Board rendered its action, findings and conclusions wholly erroneous and defective. We agree and conclude the Board has not completed the hearing required by Article 8 of the Policy Manual. As a result, the trial court was without subject matter jurisdiction, and we are without jurisdiction to decide the merits of this appeal.

In order to justify its position that the Board completed its duty the City contends that the sole function of the Board was to decide from evidence presented to it whether the charges were supported. It is the City's position that "the city charter places the sole authority to terminate employees with the city administrator." It cites the charter for the City of St. Charles, Article 5, § 5.3(a). The provisions of the charter do not support this position. The charter provides "he [City Administrator] may suspend or remove all city employees, including department heads and appointed administrative officers provided under this charter, except as otherwise provided by law, this charter or the personnel code to be adopted pursuant to this charter." Those provisions authorize the City Administrator to suspend or remove employees. They do not prohibit other persons or the Board from determining suspension or removal. In addition, Article 7 of the Rules of Conduct contained in the Policy Manual for the City provide that the Chief of Police can,

and in one circumstance, must direct discipline which includes dismissal. That provision states:

> Any employee *found guilty* of a violation of any Article contained herein *by the Chief* of Police shall be disciplined as deemed appropriate for the offense and *as directed by the Chief* except that any employee found guilty of a violation of Article 6 shall be dismissed from the Department. Authorized forms of discipline are, in descending order of severity, dismissal from the department, suspension from duties without pay, loss of accumulated compensatory time, reduction in grade, rank or range, extra duties and a forfeiture of pay not to exceed the actual monetary loss of St. Charles city. (our emphasis)

Obviously, the City Administrator is not the sole authority to terminate employees of the city. Under the Articles of the Rules of Conduct the determination of discipline is initially with the Chief of Police, and subsequently with the City Administrator who is authorized to review an "appeal". The administrative decision of the City Administrator includes a review of the finding of responsibility and the form of discipline, and is reviewable by the Board. Although the proceeding before the City Administrator is called an "appeal" it is more properly a reconsideration or rehearing. In the same manner, the proceeding before the Board is not an "appeal" but rather a rehearing and redetermination. In the present case, the sworn testimony and evidence was first presented to the Board which made a written statement of findings of facts and conclusions, but no determination on the question of discipline. This is not in accord with Article 8 of the Rules of Conduct which requires the Board's decision to be based upon its facts and findings. Article 8 provides:

> A. Any employee who has been disciplined for a violation of these Articles resulting in suspension without pay, demotion or discharge may appeal such action in accordance with the city of St. Charles personnel manual.
>
> B. Procedure:

> 1. The employee may, within ten (10) calendar days of written notice of discipline, file a written request for review and appeal with the city administrator. Each such request shall set forth the reason for appeal of the action thereon. The review shall be scheduled at the convenience of the City Administrator and may be conducted through informal interviews of those parties involved.
>
> The City Administrator shall render an administrative decision....
>
> 2. Upon conclusion of review and within ten (10) calendar days of receipt of the City Administrator's decision if the appellant is not satisfied, he/she may file a formal request for an appeal hearing to be conducted by a panel of Personnel Board members.
>
> Composition of Hearing Panel:
>
> The hearing panel shall consist of three (3) members of the Personnel Board ...
>
> .   .   .   .   .
>
> The appellant shall have the right to appear and be heard in person or by legal counsel, or to have an advisor he/she may choose to aid and assist him/her in presenting the appeal.
>
> .   .   .   .   .
>
> Within ten (10) calendar days upon conclusion of the hearing, the Board shall submit a written statement of facts, findings and *the Board's decision* based upon that information. The decision of this Board shall be final. (our emphasis)

Nothing contained in the charter is inconsistent with the trial court finding that the Board, reviewing the City Administrator, had the jurisdiction and duty to determine both guilt and discipline. The legislative and rule provisions of the City of St. Charles are no different than those considered in *Feltz*.

We are required sua sponte to look to the question of whether this court has jurisdiction. *In re Marriage of D'Aquila*, 680 S.W.2d 446, 446 (Mo.App.1984). We find that the trial court did not have jurisdiction to determine the issues raised in the peti-

tion for review under Chapter 536 because the proceedings before the Board as an agency in a contested case were expressly incomplete and the judgment not a final decision. The Board did not hear evidence on the issue of discipline and made no determination on that issue although we conclude that it had the duty and jurisdiction to do so. As in the *Feltz* case, the Personnel Board must evaluate guilt and if relevant determine and impose discipline within the range provided in Article 7 of the Rules of Conduct for the city. *Feltz*, 675 S.W.2d at 62–63. It is to independently determine by hearing all of these matters. For that purpose, it holds an evidentiary hearing and makes findings consistent with the provisions of Chapter 536 RSMo 1978. Accordingly, we reverse and remand to the trial court for the purpose of remanding to the Personnel Board to complete the appeal hearing from the administrative decision of the City Administrator.

■ Because issues are likely to to remain in the case or reoccur after remand, we look to the charges and evidence in view of the matters of law presented to the trial court and preserved before this court. A review of the departmental rules of conduct indicates that the chief of police is charged with the duty of an initial finding of guilt. He also determines discipline appropriate for the offense(s). Article 7 (Rules of Conduct). Any employee so disciplined may "appeal" in accordance with the City of St. Charles Personnel Manual. Article 8. The appeal consists of a review by the City Administrator who "shall render an administrative decision." Article 8.B.1. The nature of the administrative decision is not described nor is there any provision in the Rules of Conduct that the City Administrator determine discipline. However, he has authority to discharge a city employee under the City Charter Article 5, § 5, 3(a). An administrative decision of the City Administrator is subject to appeal to the Personnel Board. Article 8.B.2. The three-member Personnel Board exists "for the purposes of hearing and disciplinary appeals." It conducts hearings and "shall submit a written statement of facts, find-

ings and the *Board's decision* based upon that information." It is the decision of the Board not that of the Chief of Police or the City Administrator which is final.

■ We find the provisions of Ordinance 2–342 not relevant to the present facts. The determination of the Board that the actions and conduct of the police officers violated that ordinance is therefore unsupported by the evidence.

This ordinance provides:

Employees of the city shall give fair and equal treatment to every citizen. No employee of the city shall grant special consideration or treatment or advantage to any citizen beyond that which is available to every citizen.

These provisions prohibit all city employees including police officers from representing the City to the benefit of some peaceful citizen and the detriment of another. In doing the acts charged they were not performing services for or representing the City. The City does not contend that they were acting on its behalf. Further, there is no evidence to support a finding that these officers would not have performed the same service for Dr. Mueller that they performed for Dr. Rodden. Dr. Rodden's complaint was that as a peaceful citizen, Dr. Mueller was committing acts of slander against him. If true, Dr. Mueller was not in the same category. Although the activities of the police officers were not in promotion of the enforcement of existing law, their acts were not unfair or unequal treatment of two equally positioned peaceful citizens. The element of personal gain by the police officers in their individual capacity is not involved in this charge but is covered under Ordinance § 2–345. Under this ordinance, the prohibition is to grant a special consideration or treatment that is not available to every other citizen. There was no evidence that what the officers may have done was a service unavailable to any other citizen, including Dr. Mueller. This ordinance is not in point.

■ The officers were also charged with violating Ordinance § 2–345 which prohib-

its employees from engaging in any business or transaction which is incompatible with the proper discharge of their public duties or would tend to impair their independence or judgment in the performance of their official duties. This ordinance does not use the word "employment". The Board found that the police officers violated the ordinance by accepting employment by Dr. Rodden and entrapping Dr. Mueller.

■ On a related charge, the Board also found the officers violated general order No. 4 which requires any member of the department desiring to work at a "job" on their off-duty time for an employer other than the City of St. Charles to make a request for approval from the Chief. The Board made no determination that the officers worked at a "job". The Chief of Police testified before the Board. Although his findings and opinion were not binding on the Board, he explained that he discharged the defendants in part because he suspected personal gain. There was no such evidence. According to the provisions of general order No. 4, "police related" off-duty employment required that the officer be in uniform, under the direct supervision of a commanding officer on duty, and employed for the purpose of enforcing laws only. Clearly, the general order was not violated by "police related" off-duty employment as defined by the order. The same general order provides that "non-police related" off-duty employment requires an employer. There is no evidence to support a finding that Dr. Rodden provided a "job" for which he was an employer of the police officers.

■ The Board also found that the officers violated Article 18 of the Rules of Conduct which prohibits conduct which would reflect unfavorably on the department and includes acts which would bring the department into disrepute or reflect discredit upon the officer as a member of the department or that impairs the operation or efficiency of the department or the officer. It is not clear how this charge was supported by evidence. Dr. Mueller testified that the officers visited his office and asked questions and made comments regarding Dr. Rodden, and that he gave certain responses. He also testified that he knew them to be police officers at the time of his testimony before the Board. He offered no testimony that the actions of the police officers reflected unfavorably on the department or hindered the department or the officers in the due performance of their duties. No other witnesses testified to those facts except the Chief of Police as to his conclusions. It is not clear how the discovery of a private slander could be a violation of Article 18. There is no contention that the acts of the officers entrapped Dr. Mueller to make statements he would not otherwise make. Absent testimonial evidence of how a surreptitious private investigation causes disrepute or brings disrespect we do not know how violation of this rule of conduct was proved to be violated.

■ Finally, the Board found the officers violated Article 37 of the Rules of Conduct in regard to requests for assistance. That Article requires that in the event a person requests assistance or advice or makes a complaint, a report on that information will be obtained in an official and courteous manner and properly and judicially acted upon consistent with established departmental procedures. We find nothing in that Article that relates to the facts of the present case. That article describes the proper procedure to render assistance on police matters. There has been no contention by the City that the matters involved in the present case were police matters. On the contrary, they contend that facts surrounding a private slander are not violations of the law and require no law enforcement procedures. The Board found a violation because the officers undertook an investigation for a citizen against another citizen. That finding is irrelevant to Article 37. We find Article 37 describes how a police officer is to perform his official duties. The City does not contend that these officers under these facts were performing official duties in a manner prohibited by Article 37.

Although we find no error in the judgment of the trial court, we find that the trial court was without jurisdiction for the reason that the Board's decision was not final. Because the facts were undisputed the only action for the Board was to apply the facts to the law in determining both violation of the ordinances, rules and orders, and if appropriate, determine the proper discipline. However, the judgment of the trial court ordering reinstatement of the officers is not supported by subject matter jurisdiction. Accordingly, we reverse and remand with directions that the trial court remand the proceeding to the Board of Personnel of the City of St. Charles for proceedings not inconsistent with this opinion.

SIMON and GARY M. GAERTNER, JJ., concur.